**DUBUQUE PACKING COMPANY, INC., Appellee,**

v.

**Joe FITZGIBBON and Pat Fitzgibbon, Co-Partners d/b/a J & P Distributing Co., and Security Bank and Trust Company, a Banking Corporation, Appellants.**

No. 52556.

Court of Appeals of Oklahoma, Division No. 1.

July 31, 1979.

Released for Publication by Order of Court of Appeals Aug. 30, 1979.

Ungerman, Conner, Little, Ungerman & Goodman, by John B. Wimbish, Tulsa, for appellee.

Wallace & Owens by W. Neil Wilson, Miami, for appellant Security Bank and Trust Co.

ROMANG, Presiding Judge:

The question presented for review is whether the Appellant Bank is liable on a document which expired October 18, 1974, as to two pre-expiration transactions, otherwise covered, on which payment under the document was not due until after the expiration date. Our task is to decide (A) whether the document is a guaranty or a letter of credit, (B) how it applies to the two transactions in question, and, if necessary, (C) whether the Appellee shall receive an award of additional attorneys' fees on appeal.

### A.

To provide security for certain purchases from the Appellee-Creditor (Seller) to J & P Distributing Co., a co-partnership (Buyer) the Security Bank and Trust Co. (Bank issued the following document (quoted in its entirety except for letterhead, addressee and salutation):

> As of October 18, 1973, this letter is your guarantee up to a maximum of $40,000 that the Security Bank and Trust Company of Miami, Oklahoma, will pay any unpaid invoice for products properly delivered in compliance with purchase orders that cover them and remain unpaid for a period of fifteen (15) days after presentment for payment.
>
> A copy of corresponding bill of lading, signed and accepted by J and P Distributing Company of Miami, Oklahoma, along with cover letter with reference to guarantee signed by an officer of you company certifying that the invoice is correct in every respect for products that we [sic] delivered and conformed in every way received from J and P Distributing Company of Miami, Oklahoma, will be necessary.

> This guarantee may be voided upon 30 days written notice mailed to your office in Dubuque, Iowa. If you have any questions or suggestions, please advise. This letter of guaranty will expire one year from date.

The characterization of this document is important because different degrees of strictness are applicable to guarantees and letters of credit.

While it may be that the Uniform Commercial Code is not applicable to this transaction, 12A O.S.1971, § 5–102, the Code does provide a useful definition of a letter of credit. In § 5–103(1)(a) the U.C.C. defines "credit" or "letter of credit" as

> . . . an engagement by a bank . . . made at the request of a customer and of a kind within the scope of this Article (Section 5–102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. . . .

The term "guaranty" is defined as "a promise to answer for the debt, default or miscarriage of another person." 15 O.S.1971, § 321.

From a reading of these two definitions a key difference seems to lie in one of the conditions for liability, i. e. the Buyer's default. Two major commentators describe the difference as follows:

> Nor is a letter of credit a contract of guaranty or suretyship. A guarantor or surety is often liable only after the beneficiary has unsuccessfully sought payment from the issuer's customer, that is, a buyer of goods. Under a letter of credit, however, the issuer becomes bound *in the first instance* to pay the beneficiary, and the beneficiary may look immediately to the issuer for payment of drafts presented. Again, the beneficiary is not subject to the various technical and nontechnical defenses that a guarantor or surety may set up." White and Summers, Handbook of the Law Under the Uniform Commercial Code p. 240 (West 1972) (footnotes omitted—emphasis in the original).

The instant letter provides that the Bank "will pay any unpaid invoice . . . [which] remain[s] unpaid for a period of fifteen (15) days after presentment for payment." To be paid it was necessary to present the Bank a "bill of lading, signed and accepted by . . . [the Buyer]" and a cover letter signed by the Seller's officer referring to the "guarantee" and certifying that the invoice was correct.

We conclude the document was a guarantee and not a letter of credit. For one thing, the letter itself refers to itself four times as a guarantee or a letter of guarantee. While the name that parties give a transaction does not foreclose a court from treating it for what it is, the parties' use of language must be a powerful source of the meaning of a written document. But more importantly, while the document does not expressly say the Bank will pay only if the Seller seeks payment from the Buyer first, that seems to us the clear intent of the parties. The documents contemplates that the invoice to be paid by the Bank remains unpaid 15 days after presentment for payment. This must mean that it remains unpaid *by the Buyer* for 15 days after presentment *to the Buyer*. Any other meaning would strain the language used. It is too much to say the document meant that the Bank pays only if the invoice remains unpaid *by the Bank* for 15 days after presentment *to the Bank*.

### B.

This conclusion brings us to the remaining substantive question. It is undisputed that two sales occurred on October 11 and 18, 1974 and that the bills of lading and cover letters were not presented to the Bank until after October 18, 1974, the date the guarantee expired. The question is whether the Bank was liable on the guarantee for these two pre-expiration purchases with post-expiration requests for payment.

The Seller argues that the condition requiring the presentation of documents for payment under the guarantee is a condition subsequent to the Bank's obligation to pay which arises on the sale of goods to the Buyer but is discharged by the Buyer's payment of the invoice. Under this argument the Bank's liability preceded the expiration date. The Bank argues the law requiring strict compliance with a letter of credit. While we have determined that the document is not a letter of credit this does not render the Bank's argument irrelevant.

The document is essentially a promise from the Bank to the Seller wherein the consideration is either the Buyer's payment for the guarantee or the Seller's reasonable action in reliance on it by selling goods to the Buyer. Construing the ambiguities most strongly against the drafter we must determine whether the Seller's sale of goods within 15 days prior to the "expiration" of the promise was reasonable reliance on the promise. Since the invoices had to remain unpaid for 15 days after presentment to the Buyer, it was clear that the Bank would have no obligation to pay the Seller until after the guarantee expired.

The guarantee promises, on condition of the presentation of documents, to "pay any unpaid invoice for products properly delivered in compliance with purchase orders that cover them . . . " where the invoice remains unpaid for 15 days. It is the unpaid bill which the Bank promises to pay after the passage of 15 days. As we read the document the promise to pay is triggered by the sale of goods to the Buyer subject to discharge by (1) the Buyer's payment in 15 days, (2) Seller's failure to present appropriate documents, or (3) Bank's payment. The promise speaks of "unpaid invoices for products properly delivered in compliance with purchase orders . . . ." The common signification of such language is that the invoice normally accompanies or follows the goods while payment is at the time of delivery or later. *Cf.* 12A O.S.1971, § 2–310(a).

The clear operative effect of the guarantee was to require the delivery of goods in conformity with a purchase order, the delivery of an invoice to the Buyer, and the presentation of a claim for payment with documents if payment is not received within 15 days. The fact which uniquely creates

the liability of the Bank under the guarantee is the sale of goods induced by the Bank's guarantee of payment. To say, as urged by the Bank, that the guarantee only covered sales consummated before October 3 (15 days before October 18) requires an unnatural interpretation of the language that "[t]his letter of guarantee will expire one year from date." The "letter will expire" it says, not "the Bank's obligations will terminate." Perhaps the latter was meant. If so, the drafter should have been clear. It may not now complain that the Seller took it at its reasonable word.

## C.

Appellee includes in its brief a request for $1,000 additional attorney fee for the appeal under 12 O.S.1971, § 936. The Appellee was allowed $1,500 as attorney fee for services in the District Court. We believe attorney fees are required under the cited section ("shall be allowed . . . ") but that the amount must be "reasonable" as "set by the court." We find that the attorneys for Appellee should be, and they are hereby allowed an attorney fee of $1,000 for services rendered in this appeal, which attorney fee is taxed as part of the cost herein to be paid by the Appellant.

AFFIRMED.

REYNOLDS and BOX, JJ., concur.